Order, Supreme Court, New York County (Emily Jane Goodman, J.), entered April 23, 2010, which denied respondent New York City Transit Authority’s cross motion to dismiss the petition brought pursuant to CPLR article 78, affirmed, without costs.
The New York City Transit Authority (TA) is a public benefit corporation organized and existing under Public Authorities Law § 1201 et seq. to provide bus and subway services in New York City. In August 1984, as part of a reorganization of the TA, the New York City Department of Personnel created the title of Station Supervisor with two assignment levels, Station Supervisor Level I (SS-I) and Station Supervisor Level II (SS-II). Since Station Supervisor is a single title, the skills requirements for SS-I and SS-II are the same, and applicants for jobs in this title need take a single competitive exam only; no additional exam is needed to move from SS-I to SS-II.
Petitioner Subway Surface Supervisors Association (SSSA) is the exclusive representative of SS-I workers, while SS-II workers are represented by the Transit Supervisors Organization (TSO). The initial salary range when the Station Supervisor title was created was $24,338-$36,047. Through the collective bargaining process, SSSA and the TA reached successive multiyear agreements including wage increases and other benefits for SS-Is. The TSO and the TA likewise reached successive multiyear agreements for SS-IIs.
When the two job categories were created, the functions and duties of SS-Is and SS-IIs differed, and SS-IIs received about *533 $14,000 more in base salary. Currently, SS-IIs earn about $83,000, and SS-Is earn about $69,000. However, since 2003, the TA has been shifting work from SS-IIs to SS-Is, and, according to SSSA, there is currently no significant distinction between the work performed by SS-Is and that performed by SSIIs. SSSA further contends that, as a result of attrition in the SS-II position, a greater portion of the work common to both positions is assigned to SS-Is.
SSSA alleges that, by assigning SS-Is to perform SS-IIs work, the TA has violated the Civil Service Law, which prohibits “out-of-title work” (Civil Service Law § 61 [2]). In lieu of an answer, the TA moved to dismiss the petition, on the grounds that it was barred by the applicable four-month statute of limitations and by laches. The TA further contended that Supreme Court lacked subject matter jurisdiction over the dispute and that the petition failed to state a cause of action. In opposition, SSSA argued, for the first time, that, since they performed the same work, SS-Is were entitled to be paid at the same rate as SS-IIs, under Civil Service Law § 115 and the Equal Protection Clauses of the United States and New York Constitutions. In reply, the TA contended that SSSA had abandoned the petition, which sounded under Civil Service Law § 61. The TA similarly argued that the court should not consider SSSA’s Civil Service Law § 115 claims, which it raised for the first time in opposition to the TA’s motion to dismiss the petition. The TA also posited that, in any event, section 115 only applies to state employees, that the TA is a public authority, and that its employees are, therefore, not governed by section 115. The TA further argued that, by virtue of its repeated participation in negotiating salary agreements for SS-Is, SSSA should be estopped from challenging, or had waived or otherwise lost any standing to challenge, the salary levels. Finally, the TA asserted that SSSA’s section 115 claim implicated the Taylor Law (Civil Service Law art 14) and therefore fell within the exclusive jurisdiction of the Public Employment Relations Board (PERB), and not Supreme Court, in the first instance.
By leave of court, SSSA filed a supplemental affirmation in response to arguments raised by the TA in its reply. Among other things, SSSA contended that Public Authorities Law § 1210 (2) expressly provided that TA employees are governed by the provisions of the Civil Service Law, including section 115. The TA filed a sur-reply reiterating that SSSA had abandoned its claim under Civil Service Law § 61, which was the sole theory identified in the petition. The TA also contended that it was not a division of the State and that its employees were not state employees or otherwise subject to Civil Service Law § 115.
*534 By order entered April 23, 2010, the court held that SSSA had abandoned its claim under Civil Service Law § 61, and had advanced its claim under section 115 for the first time only in opposition to TA’s motion to dismiss the petition. The court declined to dismiss the petition, however, noting that it had afforded the TA ample opportunity to respond to SSSA’s new arguments. On the merits, noting that Public Authorities Law § 1210 (2) expressly states that TA employees are governed by the provisions of the Civil Service Law, the court found that Civil Service Law § 115 did apply to those employees. The court also opined that, under section 115, SS-Is would be entitled to the same pay as SS-IIs if they performed the same work. The court found, however, that questions of fact existed whether SS-Is and SS-IIs performed the same duties. The court referred this factual issue to a Special Referee to report on. Nevertheless, the court granted the TA leave to appeal the court’s determination of the four issues on which its decision rested.
Civil Service Law § 115 codifies a critical public policy, which is that, “to attract unusual merit and ability to the service of the state of New York, to stimulate higher efficiency among the personnel, to provide skilled leadership in administrative departments, to reward merit and to insure to the people and the taxpayers of the state of New York the highest return in services for the necessary costs of government,” there should be “equal pay for equal work, and regular increases in pay in proper proportion to increase of ability, increase of output and increase of equality of work demonstrated in service.” If the dissent’s mistaken interpretation of the case law were applied, this would become a hollow promise that afforded no remedy for those it was designed to protect, such as the petitioners here. The dissent has further misconstrued the nature of this dispute as involving a mere dissatisfaction with a collective bargaining agreement, when in reality it involves a violation of the important public policy codified in the Civil Service Law.
The dissent acknowledges that Civil Service Law § 115 applies to TA workers, notwithstanding that they are, strictly speaking, employees of a public authority. Nevertheless, the dissent incorrectly opines that the workers are wrong to invoke that statute, because it “merely enunciates a policy and confers no jurisdiction on a court to enforce such policy” (quoting Matter of Civil Serv. Empls. Assn., Inc., Local 1000, AFSCME, AFL-CIO v State of N.Y. Unified Ct. Sys., 35 AD3d 1008, 1010 [3d Dept 2006] [internal quotation marks omitted]). A closer review of the cases reveals that no such “jurisdictional” prohibition exists. Indeed, Gladstone v Board of Educ. of City of N.Y. (49 Misc *535 2d 344 [1966], affd 26 AD2d 838 [1966], affd 19 NY2d 1004 [1967], cert denied 389 US 976 [1967]), on which Matter of Civil Serv. Empls. Assn. relies, overstated the holdings of the cases it cited. For example, in one of those cases, Matter of Goldberg v Beame (22 AD2d 520 [1st Dept 1965], revd on other grounds 18 NY2d 513 [1966]), this Court, in construing Civil Service Law § 37, the forerunner to section 115, observed that the statute “is a mere statement of general policy applicable to all Civil Service employees. It does not contain, however, a mandatory direction that such principle must be applied in all cases under any and all conditions” (22 AD2d at 522 [emphasis added], quoting Matter of Beer v Board of Educ. of City of N.Y., 83 NYS2d 485, 486-487 [Sup Ct, Kings County 1948], affd 274 App Div 931 [1948], appeal dismissed 299 NY 565 [1949]). Beer was also cited by the Gladstone court.
In its last pronouncement on the subject in 2000, this Court stated that “[t]he principle of equal pay for equal work need not be applied in all cases under any and all circumstances” (Bertoldi v State of New York, 275 AD2d 227, 228 [1st Dept 2000], lv denied 96 NY2d 706 [2001]). The clear implication of that statement is that there are circumstances in which the principle of equal pay for equal work must be applied and that this Court has the power to apply it. The mere fact that there are no reported cases in which a court has exercised such power does not mean that courts do not have that power. The dissent fails to reconcile the case law acknowledging that there may be circumstances in which the policy of equal pay for equal work must be applied, with its conclusion that no court has jurisdiction to apply it. The case law establishes that a court need not presume that a disparity in pay is violative of section 115, but that, nevertheless, it may correct the disparity where “there is palpable discrimination or arbitrary action detrimental to the individual or class” (Beer, 83 NYS2d at 487). SSSA’s petition sufficiently alleges “arbitrary action” by the TA in paying SS-Is less than SS-IIs who perform the same work.
Contrary to the TA’s position, the issue here is not whether the union negotiated an unfavorable deal but whether the TA has violated public policy. Such disputes are amenable to review by the courts (see e.g. Matter of Zuckerman v Board of Educ. of City School Dist. of City of N.Y., 44 NY2d 336 [1978]). The TA argues that SSSA’s exclusive remedy resides in the Taylor Law with PERB alone having jurisdiction over the dispute, because the dispute goes to the terms and conditions of employment, which are required to be negotiated in good faith through collective bargaining. However, to characterize this dispute as one *536 solely concerning terms that can be bargained for is to view it too narrowly.
This case is not merely about the collective bargaining agreement that SSSA negotiated, because SSSA has no ability to control pay disparity through collective bargaining. No matter what salary terms SSSA strikes with the TA through collective bargaining, it is powerless to prevent the TA from shifting work away from SS-IIs, who are represented by a separate union, and onto SS-Is. Indeed, this case contrasts with Matter of Trerotola v New York City Off-Track Betting Corp. (86 AD2d 822 [1st Dept 1982], affd 58 NY2d 856 [1983]), the primary case upon which the TA relies. There, as here, a group of OTB branch managers complained that they were being paid less than another group of branch managers that was performing the same work. However, in Trerotola, the two worker groups with disparate salaries were represented by the same union in contract negotiations. The court held there that the very changes that led to the disparity, such as consolidation of job titles and elimination of duties attached to job titles, were part of the collective bargaining process. Here there is no reason to believe that SSSA, during that process, agreed to terms that created the very situation that led to their salaries being lower than that of brother and sister workers with the same responsibilities.
Contrary to the dissent’s contention, SSSA could not prevent the TA from arbitrarily creating further inequalities in the nature of work assigned to the two different classes of workers, regardless of what salary SSSA negotiated with the TA. For this reason, and contrary to the dissent’s position, the fact that SS-Is bargained for their salary has no bearing on whether they have a viable equal protection claim, and we find that the petition sufficiently alleges the claim (see Margolis v New York City Tr. Auth., 157 AD2d 238, 241-242 [1st Dept 1990]). Indeed, because of SSSA’s inability to control SS-II pay levels, only a judicial declaration that the TA illegally differentiated between the two classes of workers, if that is indeed what occurred, could prevent a salary disparity from re-emerging. Concur— Mazzarelli, J.P., Moskowitz and Manzanet-Daniels, JJ.